**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Broadcast Music, Inc.; EMI Blackwood Music Inc.; Cotillion Music, Inc.; Mary Bono as Trustee of the Bono Collection Trust; House of Cash, Inc.; Songs of Universal, Inc.; Lisa Anne Loeb d/b/a Furious Rose Music; Robert Kuykendall; Richard A. Ream; Bruce Johannesson and Bret M. Sychak, a partnership d/b/a Cyanide Publishing; Bradley Kirk Arnold; Robert Todd Harrell; Matthew Darrick Roberts and Christopher Lee Henderson, a partnership d/b/a Escatawpa Songs; Sony/ATV Songs LLC; Jesse Harris, an individual d/b/a Beanly Songs; Embassy Music Corporation; Reynsong Publishing Corp.; Jon Randall Stewart, an individual d/b/a WHA YA SAY Music; Sony/ATV Songs LLC d/b/a Sony/ATV Tree Publishing; Mr. Bubba Music, Inc.; Hinder Music Co., a Division of Hinder Publishing LLC; Universal Music MGB NA LLC d/b/a Universal Music Careers; Christopher A. Daughtry, an individual d/b/a Surface Pretty Deep Ugly Music,<br><br>Plaintiffs,<br><br>vs.<br><br>TLM Investments, P.L.C. d/b/a Outpost Saloon and Linda A. McFarlin a/k/a Linda McFarlin Miller and Timothy J. Miller, each individually,<br><br>Defendants. | No. CV 09-8131-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Doc. #26), Motion for Summary Disposition (Doc. #28) and their Memorandum in Support of Costs and Attorneys' Fees (Doc. #29). Defendants did not file a response to any of Plaintiffs' aforementioned motions. For the reasons cited herein, the Court denies Plaintiffs' Motion for Summary Disposition, grants Plaintiffs' Motion for Summary Judgment, awards Plaintiffs costs and attorneys' fees and orders a permanent injunction against Defendants from further infringement of works within the BMI repertoire.

**I. Background**

Plaintiffs filed a Motion for Summary Judgment on March 10, 2010. (Doc. #26). Along with their Motion, Plaintiffs filed a separate Statement of Facts in Support. (Doc. #27). Defendants have not filed a response to the Motion. The Court therefore accepts Plaintiffs' undisputed facts as true. L.R. Civ. P. 56.1(b).

Individually named Plaintiffs are the copyright owners of various musical compositions that are the subject of the pending litigation. (Doc. #26 at 2). Plaintiffs each own the exclusive right to authorize public performances of their works. (*Id.*). *See* 17 U.S.C. § 106(4).[1]

Plaintiff Broadcast Music, Inc. ("BMI") operates as a non-profit performing rights organization that licenses the right to publicly perform copyrighted musical compositions on behalf of copyright owners. (Doc. #26 at 1-2). The collection of musical compositions that BMI licenses is known as the "BMI repertoire." (Doc. #26 at 2). Through agreements with

---

[1]"The owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106(4)

copyright owners, such as the individually named Plaintiffs, BMI acquires non-exclusive public performance rights. (*Id.*). BMI has acquired such rights from each of the other Plaintiffs in this action. (*Id.*).

In turn, BMI grants music users such as broadcasters, owners and operators of concert halls, restaurants, nightclubs, and hotels, the right to publicly perform any of the works in the BMI repertoire by means of "blanket license agreements." (*Id.*). Any money collected from the blanket license agreements is distributed as royalties to its affiliated publishers and composers, after a deduction of operating expenses and reasonable reserves. (*Id.*).

The twelve songs that are the subject of the present action, are registered by BMI with the Copyright office.[2] (Doc. #26, p. 3). BMI holds and has held the non-exclusive right to issue licenses to publicly perform those twelve songs. (*Id.*).

BMI alleges that Defendants infringed upon the twelve songs at 8172 East Long Mesa Drive, Suite B, in Prescott Valley, Arizona ("Outpost Saloon"). (Doc. #26, at 2, 5). Defendant TLM Enterprises, P.L.C. ("TLM") owns and operates the Outpost Saloon. (Doc. #26 at 2). TLM has the right and ability to direct and control Outpost Saloon's activities as well as a direct financial interest in the Outpost Saloon. (*Id.*).

Defendants Linda A. McFarlin a/k/a Linda McFarlin Miller and Timothy L. Miller ("the Millers") are the owners and managing members of Outpost Saloon. (Doc. #26 at 2-3). In addition to TLM, the Millers have the right and ability to direct and control Outpost Saloon's activities as well as a direct financial interest in the Outpost Saloon. (Doc #26 at. 3).

Between May 2005 and June 2009, BMI repeatedly informed both TLM and the Millers (collectively known as "Defendants") of the need to obtain permission for public

---

[2]The twelve songs include: (1) "And When I Die;"(2) "Beat Goes On a/k/a The Beat Goes On;" (3) "Folsom Prison a/k/a Folsom Prison Blues;" (4) "Stay;"(5) "Talk Dirty to Me;" (6) "Kryptonite;" (7) "Unskinny Bop;" (8) "Don't Know Why;" (9) "Metal Health a/k/a Metal Health (Bang Your Head);" (10) "Whiskey Lullabye a/k/a Whiskey Lullaby;" (11) "Lips of an Angel;" (12) "Home." (Doc. #27-2, Exhibit A).

- 3 -

performances of copyrighted music within the BMI repertoire. (*Id.*). BMI offered to enter into a blanket license agreement with Defendants, but Defendants declined to do so. (*Id.*). On June 3, 2008, BMI sent a letter to Defendants to cease public performances of music within the BMI repertoire. (*Id.*). BMI also sent cease and desist letters in September 2008 and June 2009. (*Id.*). Currently, Defendants do not have a license from BMI to publicly perform any songs with the BMI repertoire at the Outpost Saloon. (*Id.*)

On March 6, 2009 and June 3, 2009, BMI sent investigators to chronicle songs performed at Outpost Saloon. (*Id.*). BMI's investigators observed, reported, and generated written reports of the twelve songs played at Outpost Saloon on those nights. (*Id.*). On June 18, 2009, BMI sent a letter to Defendants notifying them that BMI believed copyright infringement occurred at Outpost Saloon on the respective dates. (*Id.*). Defendants did not respond. (*Id.*).

**II. Analysis**

    **A. Summary Disposition**

Plaintiffs move for Summary Disposition of their Motion for Summary Judgment. (Doc. #28).

District Courts may establish local rules of procedure that have the force of law. Fed. R. Civ. P. 83(a)(1). In the District of Arizona, Local Rule of Civil Procedure 7.2(c) requires responsive memoranda to be filed within ten days after a motion is served. LRCiv. 7.2(c). Local Rule 7.2(i) provides that if an "unrepresented party or counsel does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the issue summarily." LRCiv. 7.2(i).

However, under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment *only* upon a showing that there are no genuine issues of material fact requiring a trial. *Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993) (emphasis added). In fact, if the movant fails to meet its burden of demonstrating the absence of triable issues, summary judgment must be denied. *Id.*

- 4 -

If a local rule requires the entry of summary judgment simply because papers opposing the motion were not filed or served, and without regard to whether genuine issues of material fact exist, then the local rule is inconsistent with Rule 56. *Id.* Local rules inconsistent with federal rules are prohibited. Fed. R. Civ. P. 83.

In sum, a motion for summary judgment cannot be granted simply because there was no opposition, even if the failure to oppose violated a local rule. *Henry*, 983 F.2d at 950. When a district court grants summary judgment due to the opposing party not filing a timely response, the district court is, in effect, imposing a sanction for the opposing party's late or nonexistent filing. *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995). This type of sanction is improper because the moving party must meet its burden of demonstrating an absence of issues for trial rather than relying on the opposing party not filing a response. *Id.*

Summarily granting Plaintiffs' Motion for Summary Judgment based on Defendants' lack of response does not fulfill the requirements of Rule 56. *See Marshall*, 44 F.3d at 725 (granting summary disposition of a summary judgment motion based on a lack of response is a sanction for the opposing party's late filing); *Henry*, 983 F.2d at 950 (summary judgment cannot be granted based on a lack of timely filing by the opposition). As such, the Court denies Plaintiffs' Motion for Summary Disposition of Plaintiffs' Motion for Summary Judgment.

**B. Motion for Summary Judgment**

Plaintiffs filed a Motion for Summary Judgment for their claim that Defendants infringed upon twelve works within the BMI repertoire. (Doc. #26). Defendants did not file a response.

Similar to the discussion above, granting a "default" summary judgment is not proper unless movant's papers are sufficient to support the motion for summary judgment or on their face the movant's papers reveal no genuine issue of material fact. *United States v. Real Prop. Located at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995). *See also Marshall*, 44 F.3d at 725 (summary judgment may not be granted simply because opposing party violated a local rule; movant must still meet its burden of demonstrating absence of genuine issue for

1 | trial). Accordingly, the Court evaluates Plaintiffs' Motion for Summary Judgment on the
2 | merits.

### 1. Summary Judgment Standard of Review

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). At the summary judgment stage, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *Id.* at 322-23.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e. a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Thus, Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.

*Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If he does not so respond, summary judgment, if appropriate, shall be entered against him. *Id.*

If a party's papers filed opposing a summary judgment motion fail to either cite to materials in the court's record or cite to materials not included in the court's record, the court is not required to scour the entire record for evidence establishing a genuine issue of fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988). The Court does not have a duty to search the entire record to discover whether any evidence supports the non-moving party's positions. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

**2. Copyright Infringement**

To prevail in their copyright infringement action, Plaintiffs must establish five elements:

1. Originality and authorship of the copyrighted works involved;
2. Compliance with the formalities of the Copyright Act;
3. Proprietary rights in the copyrighted works involved;
4. Public performance of the compositions involved; and
5. Lack of authorization for public performance.

*Broadcast Music, Inc. v. Pine Belt Inv. Dev., Inc.*, 657 F. Supp. 1016, 1020 (S.D. Miss. 1987).

The first three elements are established in the Affidavit of Kerri Howland-Kruse, BMI's Assistant Vice President, Legal. (Doc. #27 at ¶¶ 19-20). Plaintiffs provided a Schedule of Information which details the writers, publishers, dates of registration,

registration numbers, dates of infringement and places of infringement of each of the twelve songs at issue. (Doc. #27-2 at Exhibit A). Each of the musical compositions listed on line two of the Schedule was registered with the Copyright Office on the date listed on line five. (Doc. #27-1 at ¶7). The Copyright Office also issued a registration certificate with the number as seen on line six to the Plaintiff listed on line four or a predecessor in interest. (*Id.*) (citing Doc.#27-2 at Exhibit B).

The fourth element, public performance, is established through the Certified Infringement Reports of Nicci Boots and Susan Hereford, who were hired by BMI for the purpose of visiting the Outpost Saloon and making written reports of musical compositions that were performed. (Doc. #27 at ¶¶14-15). Both Boots and Hereford, BMI investigators, were sent by BMI to visit the Outpost Saloon on March 6, 2009 and on June 3, 2009 to chronicle the songs being publicly performed at the Outpost Saloon. (Doc. #27-9 at ¶¶13-14). Boots and Hereford generated written reports of the songs played at the Outpost Saloon on those nights that they had observed. (*Id.*) (citing Doc. #27-2- #27-8).

The fifth element, lack of authorization, is established by the fact that Defendants were not licensed on the dates in question. (Doc. #27 at ¶10, 13, 17). BMI repeatedly offered to enter into a license agreement with the Defendants, but Defendants chose not to. (Doc. #27-9 at ¶¶ 5,11). On the specific dates in the present action, March 6, 2009, and June 3, 2009, Defendants were not licensed by any of the Plaintiffs to publicly perform any of the musical compositions. (Doc. #27-9 at ¶¶11-12). Defendants' performances were also not otherwise authorized as evidenced by the fact that BMI sent numerous cease and desist letters to Defendants. (*Id.*). Defendants did not respond to any of these letters.

The Court finds that Plaintiffs have met their burden of proving that there exists no genuine issue of any material fact. Therefore, the Court grants Plaintiffs' Motion for Summary Judgment.

### 3. Statutory Damages

Plaintiffs request a total award of $36,000, i.e. $3,000 for each of the twelve acts of infringement.

A plaintiff can receive an award of statutory damages "in a sum not less than $750 or more than $30,000" per infringement, in lieu of an award representing the plaintiffs' actual damages and/or the defendant(s)' profits. 17 U.S.C. § 504(c)(1). The court has the discretion to assess damages within these statutory limits. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-232 (1952).

Statutory damages are "designed to discourage wrongful conduct . . . and vindicate the statutory policy." *Id.* at 233. "The court's award should be designed to compensate plaintiffs as well as to punish defendant[s]." *Prater Music v. Williams*, 5 U.S.P.Q.2d 1813, 1816 (W.D. Mo. 1987).

To further discourage continued abuse and give effect to the Copyright Act, the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees. *See EMI Mills Music, Inc. v. Empress Hotel*, Inc., 470 F. Supp. 2d 67, 75-76 (D. Puerto Rico 2006). "If the copyright laws are to have any effect, a judgment against [a] defendant must be appreciably more than the amount he would have had to expend to obtain permission." *Prater*, 5 U.S.P.Q.2d at 1816. Music users should be "put on notice that it costs less to obey the copyright laws than to violate them." *Music City Music v. Alfa Foods Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985).

For example, courts have held that an award of three times the lost registration fees is a 'just' award. *See Halnat Pub. Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933 (D. Minn. 1987) (awarding three times the lost registration fees of $10,842 which amounted to $32,526, totaling over $2,700 per infringement); *Broadcast Music, Inc. v. Entertainment Complex, Inc.*, 198 F. Supp. 2d 1291 (N.D. Ala. 2002) (awarding plaintiffs $43,000 in total statutory damages because that approximated three times the amount of unpaid licensing fees to date; award totaled $3,909.09 for each of the eleven copyright violations); *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994) (noting that courts typically award three times the amount of a properly purchased license for each infringement; damages range from $1,500 to $5,000 per infringement).

The court may also award the amount of statutory damages to reflect the degree of

culpability exhibited by Defendants. *See Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.*, 606 F. Supp. 554, 555-57 (D.C.N.Y. 1985). "In a case where the copyright owner sustains the burden of proving . . . that infringement was committed willfully, the court in its discretion may increase the amount of statutory damages to a sum of not more than $150,000" per infringement. *Id.* "Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found the defendant's conduct to be willful." *Prater*, 5 U.S.P.Q. at 1815.

Here, Plaintiffs' request of $36,000 for Defendants' infringement furthers the statutory purposes of the Copyright Act. Defendants would have paid estimated license fees between 2005 and 2010 in the amount of $10,842.00. (Doc. #27 at ¶21). Thus, Plaintiffs' requested amount, $36,000, is approximately three times the licensing fees that would have been due. Additionally, this amount comports with the purposes of a statutory award within the Copyright Act (i.e. to discourage abuse and give effect to the Copyright Act). *See EMI Mills Music, Inc.* 470 F. Supp. 2d at 75-76 (the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees).

Furthermore, BMI repeatedly notified Defendants of the need to enter into a blanket license agreement, but Defendants continuously failed to do so. (Doc. #26 at p. 3). Between May 2005 and June 2009, BMI repeatedly informed Defendants to obtain permission or a license for public performances through a series of written correspondence and 39 telephone contacts. (Doc. #27-9 at ¶¶5-10). Defendants therefore willfully and deliberately violated Plaintiffs' copyrights.

The amount requested by Plaintiffs comports with the goals of statutory damages: to discourage continued abuse and give effect to the Copyright Act. Given the willful violations by Defendants, the Court finds that Plaintiffs' requested amount of $36,000 is reasonable and appropriate.

**C. Attorneys' Fees**

In addition to Plaintiffs' Motion for Summary Judgment, Plaintiffs' also seek $479 in costs and $11,980 in attorneys' fees pursuant to 17 U.S.C. § 505 of the United States

- 10 -

Copyright Act. (Doc. #29). Plaintiffs also argue that Defendants' lack of response entitles them to summary disposition of Plaintiffs' demand for costs and attorneys' fees. (*Id.*). Defendants did not file a response.

Under the Copyright Act of 1976, a court may "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. "Fees are proper under this statute when either successful prosecution or successful defense of the action furthers the purposes of the Copyright Act." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007).[3] As such, courts routinely award the reasonable fees incurred by a plaintiff. *Broadcast Music, Inc. v. Fox Amusement Co.*, 551 F. Supp. 104, 109-10 (N.D. Ill. 1982).

The granting of such an award is left to the trial court's discretion. When making such a determination, the court may consider several non-exclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, n.19 (1994) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986)).

When applying the above factors, a court must do so while remaining "faithful to the purposes of the Copyright Act" which include not only "[securing] a fair return for an 'author's creative labor," but also the "[stimulation of] artistic creativity for the general public good." *Fogerty*, 510 U.S. at 526-7 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). If an award of fees would not comport with these policies, then fees should not be awarded. *Fantasy,* 94 F.3d at 558.

The Copyright Act also expressly provides that the Court "in its discretion may allow the recovery of full costs by or against any party . . ." 17 U.S.C. § 505. Under this provision,

---

[3]According to the language of 17 U.S.C. § 505, both prevailing plaintiffs or prevailing defendants are eligible for an award of fees under 17 U.S.C. § 505. *Perfect 10, Inc.*, 488 F.3d at 1120. *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). The standards for evaluating whether an award is proper are the same regardless of which party prevails. *Id.*

the courts have allowed full recovery by the prevailing party of its reasonable costs. *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1297 (D.C.R.I. 1982).

Plaintiffs request attorneys' fees in the amount of $11,980. Plaintiffs submitted ample evidence to substantiate the reasonableness of the fees. For example, Plaintiffs' counsel, Mark Deatherage, has handled approximately forty BMI music copyright infringement cases which allows him to handle new cases efficiently. (Doc. #29 at p. 3).

Plaintiffs' counsel's rate of $450 per hour in 2009 and $475 per hour in 2010 are also reasonable. These are the rates BMI has agreed to and does pay for the legal services. (*Id.*). This rate is also commensurate with the rate for attorneys with similar levels of experience in the Phoenix legal market for similar types of services. (*Id.*).

Furthermore, Plaintiffs' counsel has made many attempts to mitigate attorneys' fees by sending a settlement proposal on November 12, 2009. (*Id.* at 4). However, Defendants did not respond or propose a counter-offer. (*Id.*). Rather, Defendants intentionally ignored their obligations under the Copyright Act and forced Plaintiffs to engage in litigation to enforce their rights.

Plaintiffs incurred taxable costs in the amount of $479. (Doc. #29, Exhibit 3 at p. 2) These costs include the filing fee of $350 plus $129 for service of process. (*Id.*). The Court finds that there are no factors militating against an award of the Plaintiffs' costs in the present case. The award of $479 in costs is necessary in order to effectuate private enforcement of the Copyright Act.

The Court finds that Plaintiffs' attorneys' fees of $11,980 and costs of $479 are reasonable and comport with the purposes of 17 U.S.C. § 505.

**D. Injunction**

Last, Plaintiffs ask the Court to permanently enjoin Defendants from infringing, in any manner, the copyrighted musical compositions licensed by BMI. (Doc. #30, p. 2).

Any court can grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a). The courts have the discretionary power to grant injunctions and restraining orders, whether

- 12 -

"preliminary," "temporary," "interlocutory," "permanent," or "final," to prevent or stop infringements of copyright. H. R. Rep. No. 94-1476 (1976).

When granting a permanent injunction, a district court stated:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists . . . The threat of continuing infringement is substantial in the present case. Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI. This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

*Broadcast Music, Inc. v. Niro's Palace, Inc.*, 649 F. Supp. 958, 963 (N.D. Ill. 1985).

As in *Niro's*, Defendants wilfully disregarded the copyrights held by Plaintiffs. Because Defendants have received numerous calls, letters, and cease and desist notices from BMI but have not ceased infringement, the Court finds that a permanent injunction is warranted in order to prevent future copyright violations.

**III. Conclusion**

The Court cannot summarily grant summary judgment against Defendants based on Defendants' lack of response. Nevertheless, the Court finds that Plaintiffs' Motion for Summary Judgment presents no triable material issue of fact. Therefore, Plaintiffs' Motion for Summary Judgment is granted. The Court also finds that attorneys' fees, costs and a permanent injunction are all necessary to effectuate the purposes of the Copyright Act and shall thus be awarded to Plaintiffs.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Disposition is denied. (Doc. #28).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment against Defendants TLM Investments, P.L.C. d/b/a Outpost Saloon, Linda A. McFarlin a/k/a Linda McFarlin Miller, and Timothy J. Miller is granted (Doc. #26), this Court finding that Defendants knowingly, intentionally, and willfully infringed upon the copyrights of twelve (12) musical compositions owned and/or licensed by Plaintiffs.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded the following against TLM

Investments, P.L.C. d/b/a Outpost Saloon, Linda A. McFarlin a/k/a Linda McFarlin Miller, and Timothy J. Miller, jointly and severally:

    a. Statutory damages in the amount of $3,000.00 for each of the twelve (12) infringements, for a total of $36,000.00, pursuant to 17 U.S.C. § 504(c)(1);

    b. Taxable costs in the amount of $479, pursuant to 17 U.S.C. § 505;

    c. Reasonable attorneys' fees in the amount of $11,980, plus any additional attorneys' fees Plaintiffs incur in enforcing judgment; and

    d. Interest on these amounts from entry of judgment (28 U.S.C. § 1961).

**IT IS FURTHER ORDERED** that Defendants TLM Investments, P.L.C. d/b/a Outpost Saloon, Linda A. McFarlin a/k/a Linda McFarlin Miller, and Timothy J. Miller, and their respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, are hereby permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Broadcast Music, Inc.; information pertaining to said compositions can be found at www.bmi.com.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment in favor of Plaintiffs and against Defendants as specified above.

DATED this 21st day of July, 2010.

_____
James A. Teilborg
United States District Judge